

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-23-2004

# Local 221 v. Quaker Mfg

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4230

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Local 221 v. Quaker Mfg" (2004). *2004 Decisions.* Paper 390.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/390

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 03-4230
_____

LOCAL 221-G BAKERY, CONFECTIONERY,
TOBACCO WORKERS AND GRAIN MILLERS (BCTGM), AFL-CIO

v.

QUAKER MANUFACTURING, LLC,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania

District Court Judge: The Honorable Yvette Kane
(D.C. No. 01-cv-02450)
_____

Argued on May 5, 2004

Before: SLOVITER, FUENTES, Circuit Judges, and POLLAK, District Judge.[*]

(Opinion Filed: August 23, 2004)

---

[*] The Honorable Louis H. Pollak, Senior District Judge for the United States
District Court for the Eastern District of Pennsylvania, sitting by designation.

Paul J. Dellasega (argued)
Thomas, Thomas & Hafer, LLP
305 North Front Street
P.O. Box 999
Harrisburg, PA 17108-0999
                    *Counsel for Appellant*

Ira H. Weinstock
Jason M. Weinstock (Argued)
Ira H. Weinstock, P.C.
800 North Second Street
Harrisburg, PA 17102
                    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

Appellee, Local 221-G, Bakery, Confectionery, Tobacco Workers and Grain Millers, AFL-CIO ("Union"), is a labor organization that represents employees of Appellant, Quaker Manufacturing, LLC ("Quaker"). In November 1997, Quaker and Union entered into a Collective Bargaining Agreement ("CBA") in effect through October 2000. The CBA outlines a three-step process for settling grievances. If this grievance procedure fails, the CBA provides that the grievance may be submitted to arbitration.

Quaker subsequently decided to close one of its food plants, located in Shiremanstown, Pennsylvania. Quaker entered into a Closure Agreement ("CA") with Union representing employees at the plant. The CA superceded the CBA where the terms were inconsistent. However, remaining CBA provisions were incorporated into the CA by reference.

2

The CA provides a severance bonus to employees permanently terminated as a result of the plant closure. In April 2001, Union filed a general grievance for employees and former employees who were on workers' compensation and disability, and who did not receive the full severance pay and benefits pursuant to the CA. Union followed the grievance procedure outlined in the CBA, but the parties failed to reach a settlement. In June 2001, Union requested that Quaker submit the grievance to arbitration. However, Quaker refused to arbitrate. As a result, Union filed suit in the District Court, claiming that Quaker's refusal to arbitrate the grievance violated the CBA and the CA. Union argued that the CBA provided a right to arbitration, and that, under a plain reading of the CA, this arbitration provision was incorporated into the CA by reference. The District Court granted Union's motion for summary judgment.

Quaker filed timely appeal to this Court. We review a district court's grant of summary judgment de novo. On appeal, Quaker argues that the CBA was completely superceded by the CA and, therefore, that there is no surviving obligation to arbitrate under the CBA. Quaker also argues that the District Court interpreted the CA incorrectly by ignoring a typographical error in a provision that specifically precludes arbitration of grievances related to certain subject matter, including the payment of severance bonuses.

We are not convinced by Quaker's first argument. However, because there is an obvious typographical error in a provision of the CA that specifically limits arbitration in certain circumstances, we vacate the District Court's grant of summary judgment and remand this case for further proceedings on the interpretation of this provision of the CA.

3

Union argues that portions of the CBA, including § 3.04, which addresses arbitration, survived because they were explicitly incorporated into the CA by reference. The CA provides:

> [T]he November 3, 1997 to October 29, 2000 Collective Bargaining Agreement ("Current CBA") between [Quaker] and Union is superceded by this Closure Agreement. The current CBA is amended as shown in Paragraph 28 below. <u>The remaining provisions of the current CBA are incorporated by reference herein and are made a part of this Closure Agreement</u>. To the extent that any remaining provision in the current Collective Bargaining Agreement conflicts with the terms of this Closure Agreement, the terms of the Closure Agreement will prevail.

App. at 18 (emphasis added). Paragraph 28 (entitled "Union Representation") is unrelated to arbitration or grievance procedures. Therefore, the CA, by its plain terms, incorporates section 3.04 (entitled "Grievance Procedure") of the CBA to the extent that this section does not contradict any other CA provision.

We reject Quaker's first argument that no arbitration obligations exist under the CA. The CA contains clear language indicating that the CBA was not completely superceded by the CA. Interpreting the plain language of the CA, the CBA's arbitration provision is incorporated by reference, except where it specifically conflicts with the CA. Therefore, we find that the arbitration provision in the CBA survives to the extent that it does not conflict with provisions of the CA.

However, as Quaker points out, the CA explicitly restricts arbitration in certain instances. Under Paragraph 8 of the CA: "The parties agree to discuss in the Labor

Management meeting, disputes regarding the application of [specified paragraphs] of this Closure Agreement." App. at 26. These specified paragraphs include:

4 (Date of Closure and Schedule of Reduction);
11 (Enhanced Severance);
14 (Employee Transition Services);
18 (Employees Currently on STD and LTD);
19 (Employees Currently off Work on Worker's Compensation); and
22 (Orderly Operations and Shutdown - Code of Conduct).

Id. (emphasis added). The CA goes on to state: "Disputes regarding these paragraphs are not subject to the grievance arbitration procedure or NLRB charges." Id. Thus, the CA restricts arbitration proceedings, but only when they concern the subject matter of these specified paragraphs. The CBA grievance procedure requiring arbitration continues to apply to all other subject matter under the CA.

In the instant case, Union's grievance is based on severance payments owed pursuant to Paragraph 12 of the CA. Paragraph 12 states: "An enhanced severance bonus will be payable to Employees who are permanently terminated as a result of the closure of the Shiremanstown Plant and who meet all of the requirements as outlined in this agreement." App. at 27. The paragraph then outlines a formula for enhanced severance bonuses.

Union argues that arbitration concerning such severance payments is not restricted under the CA because Paragraph 12 is not listed as containing subject matter precluded from arbitration. However, Quaker claims that a typographical error exists in the provision of the CA limiting arbitration. Although Paragraph 12, pertaining to the enhanced severance bonus formula, is not included among the topics for which the CA restricts arbitration, Quaker

5

argues that, due to a typographical error, Paragraph 11 was mistakenly listed among those provisions for which arbitration is precluded. Quaker contends that the number "11" rather than the number "12" mistakenly precedes the title "Enhanced Severance" in the provision of the CA limiting arbitration. Quaker argues that, at the very least, the issue of a typographical error in a contract presents a dispute of material fact sufficient to warrant denial of summary judgment.

Examining the CA, there does appear to be an inconsistency in the provision limiting arbitration of certain subject matter. This provision refers to the paragraph entitled "Enhanced Severance" as Paragraph "11." Elsewhere in the text of the CA, however, Paragraph 11 is entitled "Past Service Accrual," and this paragraph discusses the date to which past service accrual is adjusted. App. at 27. Paragraph 11 does not, in fact, pertain to enhanced severance benefits. Actually, Paragraph 12 is entitled "Enhanced Severance Bonus," and describes the severance bonus payable to employees permanently terminated as a result of the Shiremanstown plant closure. Id. The District Court based its grant of Union's motion for summary judgment on the fact that Paragraph 12 was not included among the provisions precluded from arbitration under the CA. However, we agree with Quaker that listing Paragraph "11" among the restricted provisions rather than Paragraph "12" was a typographical error because Paragraph 12 actually addresses enhanced severance bonuses.

Union does not specifically contest this assertion, and describes the apparent mismatch of the paragraph number and its title as a "discrepancy" in the CA. Union Br. at 20. We

6

believe that the mismatch resulted from a typographical error and that, regardless, an inconsistency exists in the CA that affects the interpretation of a provision central to the dispute in this case. We, therefore, find that the existence of the typographical error raises a genuine issue of material fact sufficient to defeat a motion for summary judgment.

Accordingly, we vacate the District Court's grant of summary judgment to Union, and remand this case for further proceedings on whether the CA limits arbitration of disputes concerning payment of severance bonuses.